MATTER OF GONZALEZ-GOMEZ

In Deportation Proceedings

A-14220655

*Decided by Board August 9, 1967*

The provision of section 349(c), Immigration and Nationality Act, as amended, requiring that proof of loss of United States nationality be established by a preponderance of the evidence, and which provision is applicable to loss of citizenship under section 301(b) of the Act, is left undisturbed by the standard of clear, unequivocal and convincing evidence enunciated in *Woodby* v. *Immigration and Naturalization Service*, 384 U.S. 904.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—No immigrant visa.

ON BEHALF OF RESPONDENT: Donald L. Ungar, Esquire
517 Washington Street
San Francisco, California 94111

This is an appeal from the decision of the special inquiry officer finding respondent deportable as charged and granting voluntary departure with an alternative order of deportation to Mexico in the event that respondent does not leave the United States when and as directed.

The record relates to a 29-year-old married male alien, a native and citizen of Mexico who last entered the United States at San Ysidro, California on or about April 14, 1965 without an immigrant visa upon his claim to be a United States citizen. Respondent derived United States citizenship under section 1993 of the Revised Statutes of the United States, as amended by the Act of May 24, 1934, by reason of his mother having been born in the United States and thus being a United States citizen.

It is the contention of the Immigration and Naturalization Service that respondent prior to his last entry into the United States had lost his citizenship because he had not fulfilled the requirement of five years physical presence in the United States prior to his twenty-eighth birthday as required by section 301(b) of the Immigration and

Nationality Act (8 U.S.C. 1401(b)). This statute provides that a person born abroad only one of whose parents was a citizen of the United States "... shall lose his nationality and citizenship unless he shall come to the United States prior to attaining the age of 23 years and shall immediately following any such coming be continuously physically present in the United States for at least five years: *Provided*, That such physical presence follows the attainment of the age of fourteen years and precedes the age of twenty-eight years." In respondent's case this means that he must have been continuously physically present in the United States for at least five years between July 24, 1952 (his fourteenth birthday) and July 24, 1966 (his twenty-eighth birthday). Of course, he would have had to arrive in the United States prior to July 24, 1961, which was his twenty-third birthday, in order to have been in the United States for five years prior to his twenty-eighth birthday. The special inquiry officer further found that respondent's loss of United States nationality was supported by a preponderance of the evidence.

Respondent's first contention is that under *Woodby* v. *Immigration and Naturalization Service*, 87th S. Ct. 483, 384 U.S. 904, respondent's loss of United States citizenship must be shown by proof that is clear, unequivocal, and convincing rather than simply by a preponderance of the evidence.

In deportation proceedings the burden is always on the Service to establish alienage. *Matter of A—M—*, 7 I. & N. Dec. 332. Section 349 (c) of the Immigration and Nationality Act of (8 U.S.C. 1481(c)) provides that whenever the loss of United States nationality is put in issue the burden shall be upon the person or party claiming that such loss occurred to establish such claim by a preponderance of the evidence. Respondent contends that the holding in the *Woodby* case is broad enough to cover the situation where loss of United States nationality is put in issue under section 301(b) and thus the degree of proof should be that of clear, unequivocal and convincing rather than preponderance as provided for in section 349(c), Immigration and Nationality Act. We do not agree with this contention but hold that a preponderance of the evidence is the degree of proof necessary.

In the *Woodby* case the Court stated that the Congress had not addressed itself to the question of what degree of proof is required in deportation proceedings, and thus this question had been left to the judiciary to resolve. However this is not the situation in reference to a case involving loss of citizenship. Here, Congress specifically set forth in section 349(c) what the degree of proof is—a preponderance of the evidence. It is clear that in the *Woodby* case the Court took notice of this. The Court stated:

345

In denaturalization cases the Court has required the Government to establish its allegations by clear, unequivocal and convincing evidence. The same burden has been imposed in expatriation cases.

Following the last sentence the Court adds a footnote as follows:

17. Gonzales v. Landon, 350 U.S. 920; Nishikawa v. Dulles, 356 U.S. 129. But see section 349(c) of the Immigration and Nationality Act, 75 Stat. 656 (1961), 8 U.S.C. sec. 1481(c).

Section 349(c) was specifically enacted by Congress to change the degree of proof required in loss of citizenship cases from clear, unequivocal and convincing, as enunciated in the *Gonzales* and *Nishikawa* cases, *supra*, to that of preponderance. This purpose is clearly shown in the legislative history of this statute.[1] Section 349(c) is broad enough to cover loss of United States nationality whether by expatriation or by failure to comply with the citizenship retention provisions of section 301(b) as in the instant case. It appears clear that the United States Supreme Court considered that the degree of proof provision of section 349(c) was an exception to the rule the Court was enunciating in the *Woodby* case. We hold that the Court in the *Woodby* case left undisturbed the preponderance of evidence provision of section 349(c).

Turning now to the evidence supporting respondent's loss of citizenship, the record contains two sworn statements by respondent's mother (Ex. 5 and 6) in which she states that respondent lived in the United States for one year in 1955–56 and then he returned to Mexico and lived with her until 1962. We cannot accept the strained interpretation given this statement by respondent's counsel that what the mother meant was that her son had a residence in Mexico and that her statement did not mean that he was physically present there. When respondent's mother stated that he lived with her in Mexico we can give no other interpretation to this than that respondent was staying with his mother in Mexico—that he was physically there with her.

Respondent executed an affidavit on April 21, 1964, which is part of the record (Ex. 6), in which he states that he did not start his residence in the United States until after his twenty-third birthday. What did he mean by this? Can we construe that respondent was making a fine distinction between the words "residence" and "physical presence" as counsel contends? The common sense interpretation of his statement is simply that he did not come to live (reside) in the United States until after his twenty-third birthday. We feel that his statement means nothing more or nothing less than this.

The Service has made a thorough investigation, using all of the information and leads furnished by respondent, in an attempt to find some evidence of respondent's being in the United States prior to his

---

[1] House Report 1086, August 30, 1961 to accompany S. 2237.

twenty-third birthday. Six alleged former employers were contacted but no one could place respondent, either under his true name or under the various aliases and several social security numbers he had, as being in the United States prior to his twenty-third birthday.

The Department of Employment, Sacramento, California was contacted in order to ascertain respondent's place of employment and earnings in 1961, which of course is the year in which respondent attained age 23, on July 24th. The Department of Employment checked the social security records and there was no record of any employer or earnings for respondent during 1961.

Respondent was married on July 31, 1962 and at the hearing his wife testified that she met him in the United States in May or June of 1961. This would place respondent in the United States before his twenty-third birthday. However this testimony was contradicted by respondent's own testimony that he had known his wife only about three months before they were married.

The record shows by a preponderance of the evidence that respondent lost his United States nationality under section 301(b), Immigration and Nationality Act.

Counsel contends that section 301(b) is unconstitutional because of the broad sweep of the Supreme Court's decisions in *Afroyim* v. *Rusk*, 387 U.S. 253, 87 S. Ct. 1660 and *Schneider* v. *Rusk*, 337 U.S. 163, 84 S. Ct. 1187. However it is not within the province of the Board of Immigration Appeals to pass on the constitutionality of the statutes it administers. Determination of constitutionality is a judicial function.[2] Thus we will not consider counsel's allegation.

We will dismiss the appeal. Voluntary departure with an alternative order of deportation appears justified.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

---

[2] See *Matter of H—*, 8 I. & N. Dec. 411; *Matter of L—*, 4 I. & N. Dec. 556, and cases cited therein.